23-11890-E

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**LaToya Glenn,**

*Plaintiff/Appellant,*

v.

**Shane Britt and Derreck Patrick Bartlett,**

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Civil Action File No. 1:20-CV-04858-SCJ

---

## BRIEF OF DEFENDANTS-APPELLEES
## SHANE BRITT AND DERRECK BARTLETT

---

Karen E. Woodward
**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**
Meridian II, Suite 2000
275 Scientific Drive
Norcross, Georgia 30092
(404) 881-2623
kwoodward@cmlawfirm.com
*Attorneys for Defendants-Appellees*

*Glenn v. Britt, et al.*
Appeal No. 23-11890

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT OF DEFENDANTS-APPELLEES SHANE BRITT AND DERRECK BARTLETT

In accordance with 11th Circuit Rule 26.1-1(a)(3), Appellees Shane Britt and Derreck Patrick Bartlett hereby file this Certificate of Interested Persons and Corporate Disclosure Statement. The undersigned counsel of record for Appellees in the above styled action certifies that the following is a full and complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including any subsidiaries, conglomerates, affiliates, parent corporation and any publicly held corporation that owns 10% or more of the stock of a party, and any other identifiable legal entities related to a party:

Bartlett, Derreck Patrick

Britt, Michael Shane

Craig, William Thomas

Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP

Davis, Mawuli Melvyn Malcolm

The Davis Bozeman Law Firm, PC

Glenn, Latoya, as Parent, Guardian and Next Friend of A'sah Glenn

Hodge, Tiffiney D.

*Glenn v. Britt, et al.*
Appeal No. 23-11890

Jones, Steve C., District Judge, USDC, NDGA

Law Offices of Wm. Thomas Craig, LLC

Wiggins, Cary S.

Wiggins Law Group, LLC

Woodward, Karen E.


No publicly held corporation owns 10% or more of the stock of a party.

This 17th day of November, 2023.

**Cruser, Mitchell, Novitz,
Sanchez, Gaston & Zimet, LLP**


By: */s/ Karen E. Woodward*
      Karen E. Woodward
      Georgia Bar No.: 775260

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, Georgia 30092
(404) 881-2623
kwoodward@cmlawfirm.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellees disagree with Appellant that oral argument is necessary in this appeal. On the contrary, the dispositive issues already have been authoritatively decided. In addition, the facts and legal arguments are adequately presented in the briefs and the record, such that the decisional process would not be significantly aided by oral argument. See FRAP 34 and 11th Circuit Rule 34-3.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**                                   **C1 of 2**

**STATEMENT REGARDING ORAL ARGUMENT**                                   **i**

**TABLE OF CONTENTS**                                                   **ii**

**TABLE OF AUTHORITIES**                                                **iv**

**STATEMENT REGARDING ADOPTION OF OTHER BRIEFS**                        **vii**

**STATEMENT OF JURISDICTION**                                           **vii**

**STATEMENT OF THE ISSUES**                                             **1**

**STATEMENT OF THE CASE**                                               **1**

**Course of Proceedings and Disposition below**                        **2**

**Statement of the Facts**                                             **4**

**Standard of Review**                                                 **11**

**SUMMARY OF THE ARGUMENT**                                            **12**

**ARGUMENT AND CITATIONS OF AUTHORITY**                                **15**

**The District Court Correctly Concluded that the SROs' Use of Force was *De Minimis* and Cannot Support a Claim of Excessive Force**     **15**

**SRO Britt Did Not Use Excessive Force**                              **20**

**SRO Bartlett Did Not Use Excessive Force**                           **24**

**The District Court Properly Ruled the Officers are Entitled to Qualified Immunity as to the Excessive Force Claims**     **28**

**The Subject Acts are Discretionary**                                 **29**

**Britt and Bartlett Did Not Violate Clearly Established Law**        **30**

**Glenn Abandoned Unaddressed Corporal Punishment Claims**        **35**

**CONCLUSION**        **36**

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

CASES

Alexandre v. Ortiz, 789 F. App'x 169, 174 (11th Cir. 2019) ....................................................... 28

Andrade v. Sheriff of Lee Cnty, Fl, No. 23-10438, 2023 WL 6389812, *6 (11th Cir., Sept. 29, 2023) ................................................................................................................................ 24

Battle v. Bd. of Regents for Georgia, 468 F.3d 755, 759 (11th Cir. 2006) ................................. 13

Bd. of Educ. Of Indep. Sch. Dist. No 92 of Pottawatomie Cnty v. Earles, 536 U.S. 822, 831 (2002)) ............................................................................................................................ 19

Boone v. Gaxiola, 665 F. App'x 772, 775 (11th Cir. 2016) ........................................................ 35

Butz v. Economou, 438 U.S. 478, 507 (1978) ............................................................................. 34

Cordoves v. Miami-Dade County, 2015 WL 1131684 (S.D.Fla. 2015) ....................................... 27

Croom v. Balkwill, 645 F.3d 1240, 1248-49 (11th Cir. 2011) ........................................ 18, 21, 26

District of Columbia v. Wesby, 583 U.S. 48, 56-57 (2018) ........................................................ 20

Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004)(cert. den., 543 U.S. 988 (2004)) ..... 17

Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003)(cert. den., 543 U.S. 917 (2004)) ...... 20

Fuqua v. Turner, 996 F.3d 1140 (11th Cir. 2021) ....................................................................... 34

Gomez v. U.S., 601 F. App'x 841, 843, 851 (11th Cir. 2015) ..................................................... 23

Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)(cert. den. 530 U.S. 1270 (2000)) ...... 13

Graham v. Conner, 490 U.S. 386, 395 (1989) ...................................................................... 17, 20

Gray v. State, 296 Ga. App. 878, 880 (2009) ............................................................................. 19

Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008) ........................................................... 21, 31

Harlow v. Fitzgerald, 457 U.S. 800 (1982)) ............................................................................... 29

Hines v. Jefferson, 795 F. App'x at 712 ............................................................................... 23, 34

Horn v. Barron, 720 F. App'x 557 (11th Cir. 2018)................................................. 26

Jackson v. McCurry, 762 F.App'x 919, 933 (11th Cir. 2019)............................... 31, 32

Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) ............................. 30

Jones v. City of Dothan, 121 F. 3d (11th Cir. 1997)................................................. 23

Jones v. Michael, 656 F. App'x 923, 926 (11th Cir. 2016) ....................................... 23

Jones v. Walsh, 711 F.App'x 504, 506 (11th Cir. 2017) ........................................... 18

Kraus v. Martin Cnty Sheriff's Office, 753 F. App'x 668, 673 (11th Cir. 2018)......... 23

Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994).................... 29

Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002)......................................... 24, 31

Malley v. Briggs 475 U.S. 335, 341 (1986)............................................................. 30

McCall v. Crosthwait, 336 F. App'x 871, 873 (11th Cir. 2009).................................. 24

Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005)) .......................... 30

Messerschmidt v. Millender, 565 U.S. 535, 546 (2012)............................................. 34

Mullenix v. Luna, 577 U.S. 7 (2015). ..................................................................... 34

Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013)......................................... 21

Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) ......................................... 21, 23

Payroll Management, Inc. v. Lexington Ins. Co., 815 F.3d 1293, 1300 (11th Cir. 2016)........... 13

Pearson v. Callahan, 555 U.S. 223, 236 (2009)...................................................... 29

Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993)..................... 32, 33

Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022) .......................................... 30, 34

Richmond v. Badia, 47 F.4th 1172 (11th Cir. 2022) ....................................... 28, 31, 32

Robinson v. MARTA, 334 Ga. App. 746, 751 (2015)................................................. 34

Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014)............... 35

<u>Saucier v. Katz</u>, 533 U.S. 194, 200-201 (2001) ........................................................ 29

<u>Saunders v. Duke</u>, 766 F.3d 1263 (11th Cir. 2014) ................................................ 20, 31

<u>Scott v. Harris</u>, 550 U.S. 372, 380-81 (2007) ......................................... 4, 13, 22, 23

<u>Slicker v. Jackson</u>, 215 F.3d 1225, 1227 (11th Cir. 2000) ........................................ 31

<u>Smith v. Mattox</u>, 127 F.3d 1416 (11th Cir. 1997) ......................................... 7, 11, 31

<u>Stephens v. DeGiovanni</u>, 852 F.3d 1298, 1328 n. 33 (11th Cir. 2017) ................. 21, 32

<u>WBY, Inc. v. DeKalb County</u>, 2016 WL 3128397 (N.D.Ga., Jan. 13, 2016) ............ 33

<u>White v. Pauly</u>, 580 U.S.73, 137 S.Ct. 548, 551-52 (2017) ....................................... 29

<u>Ziegler v. Martin Cnty School District</u>, 831 F.3d 1309, 1319 (11th Cir. 2016) ........... 19

## <u>STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES</u>

Appellees do not adopt the briefs of any other parties.


## <u>STATEMENT OF JURISDICTION</u>

Under 28 U.S.C. § 1331, the district court had federal question jurisdiction over this civil action brought under 42 U.S.C. § 1983 seeking recovery for the alleged violation of Appellant's then-minor son's Fourth Amendment right to be free from the excessive force.

After discovery closed, Defendants-Appellees moved for summary judgment. (Doc 62). The district court granted the Defendants' motion. (Doc 87). On May 8, 2023, the district court entered judgment in favor of both defendants and dismissed the case. (Doc 88).

On June 7, 2023, Plaintiffs-Appellants filed a Notice of Appeal from the final judgment entered on May 8, 2023. (Doc 89). The appeal, which was filed within thirty days of the order granting summary judgment, was timely filed. *See* Fed. R. App. P. 4(a)(1)(A).

Appellees agree with Appellants that the matter is ripe for appeal from a final judgment. 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the District Court correctly ruled that Officer Britt's use of force was *de minimis* and therefore did not violate Fourth Amendment?

2.  Whether the District Court correctly ruled that Officer Bartlett's use of force was *de minimis* and therefore did not violate the Fourth Amendment?

3.  Whether the district court correctly concluded that Officer Britt is entitled to qualified immunity as to Plaintiff's claim of excessive force under 42 U.S.C. § 1983?

4.  Whether the district court correctly concluded that Officer Bartlett is entitled to qualified immunity as to Plaintiff's claim of excessive force under 42 U.S.C. § 1983?

5.  Whether Appellant abandoned the Corporal Punishment Cause of Action?

## STATEMENT OF THE CASE

On behalf of her then-teenaged son A.G., Plaintiff-Appellant Glenn appeals from the district court's final order granting summary judgment to Defendants-Appellees Britt and Bartlett, Newton County Sheriff's Deputies sued only in their individual capacity. (Doc 1 - pg 2, ¶¶ 2, 3, 4; Docs 87, 89). This civil rights action stems from an incident that occurred in the common room of the high school where A.G. was a student and Britt and Bartlett were assigned as school resource officers. (Id. at 1, ¶ 1). While in the common room with approximately 100 other students, A.G. stole a candy bar from the vending machine. (Id. at pp 4-5, ¶¶ 12, 13, 14). Glenn plead that "two or three SROs, including Deputy Britt and Deputy Bartlett,

ran towards A.G." and then Britt and Bartlett allegedly "intentionally choked A.G. and slammed A.G.'s head and body onto the floor and vending machine." (Id. at pp 5, 8, ¶¶ 16, 30). The Complaint contends that, as a result of the alleged force, "A.G. suffered bruises to his neck, knees, and ribs" and he "received therapy for trauma." (Id. at p. 6, ¶ 22).

In their Answer, Britt and Bartlett "expressly den[ied] that these Defendants choked A.G. and slammed his head and body onto the floor and vending machine." (Doc 15 – pg 9, ¶ 30). "The further den[ied] that they had any intention to choke, slam or injure A.G.." (Id.)  They also asserted the defense of qualified immunity. (Id. at 12).  Additionally, in support of the summary judgment motion that is on appeal, Britt and Bartlett submitted objective video evidence that discredits Glenn's version of events. (Doc 66). See Scott v. Harris, 550 U.S. 372, 380-81 (2007).

## 1. **Course of Proceedings and Disposition Below**

In this civil rights suit initiated on December 1, 2020, Glenn alleged that A.G. is entitled to damages for unlawful seizure, excessive force, corporal punishment, and battery.[1] (Doc 1). Defendants filed a timely Answer, asserting defenses of qualified and official immunity. (Doc 15). Pending a ruling on former co-defendant

---

[1] During the summary judgment briefing, Glenn abandoned the federal claim of unreasonable seizure and the state law claim for battery. (Doc 82 at 16, n. 10; Doc 87 at 5, n. 4).

Edgar's Motion for Judgment on the Pleadings (Doc 24), this Court stayed discovery and other proceedings. (Doc 40). By Order dated March 25, 2022, the District Court granted Edgar's dispositive motion, finding that there was only a single, brief instance of physical contact and minor physical injuries. (Doc 41, p. 14).

Following an extended discovery period, Britt and Bartlett moved for summary judgment. (Doc 62). On January 9, 2023, Glenn responded to the motion [Doc 82] and Britt and Bartlett filed a reply brief on January 30, 2023. (Doc 85). The District Court properly granted the Officers' motion. (Doc 87). Based on the undisputed facts, taken in the light most favorable to the Plaintiff-Appellant, the District Court correctly concluded that both Britt and Bartlett used only *de minimis* force that did not violate A.G.'s constitutional rights. (Id. at pp 10-13). The District Court also correctly found that Britt and Bartlett are entitled to qualified immunity, as the law does not clearly establish that the Officers' conduct constituted a Fourth Amendment violation nor did their conduct fall within the "obvious clarity" manner of meeting this requirement notwithstanding a lack of materially similar caselaw. (Id. at pp 13-17).

On May 8, 2023, the District Court entered judgment in favor of Britt and Bartlett, as well as Edgar, and dismissed the case. (Doc 88).

{Firm/1321/00001/APPEAL/04335296.DOCX }

On June 7, 2023, Glenn filed a Notice of Appeal from the final judgment from the Order granting the Defendants' motion for summary judgment entered on May 8, 2023. (Doc 89).

Britt and Bartlett submit this brief, demonstrating that this Court should affirm the District Court's Order.

## 2. <u>Statement of Facts</u>

Appellees Shane Britt and Derreck Bartlett are sworn deputies who were employed with the Newton County Sheriff's Office and assigned as School Resource Officers at Alcovy High School on the date of the incident. (Doc 72, Britt Dep., pp 15:20-21, 17:21-18:9; Doc 71, Bartlett Dep, pp 12:8-12, 16:9-12, 43:17-22). Latavia Washington also served as a School Resource Officer (SRO) at Alcovy High School at this time. (Doc 73, Washington Dep., pg 9:1-11).

On December 13, 2018, A.G. was in ninth grade at Alcovy High School. (Doc 67, A.G. Dep., pg 5:21-22, 13:7-9, 27:17-25). At Alcovy High School, there were fights on a weekly basis. (Doc 74, Edgar Dep., pg 27:4-7). The signs of a fight taking place at Alcovy High School were a huge commotion, an uptick in volume, people rushing towards the area of the incident. (Doc 74, pg 27:8-13; Doc 72, pp 80:2-5, 81:4-8).

Before classes began on the morning of December 13, 2018, A.G. stood in the commons area talking to three friends. (Doc 67, pp 29:6-10, 31:9-22). While the

three teens were talking, A.G.'s friend stated that the vending machine was open. (Id., pg 32:2-4). A.G. and his friends ran over to the vending machine to take something. (Id., pg 32:9-10). A.G. took a Snickers bar from the machine. (Id., pp 32:11-19, 112:2-19; Doc 66, Ex C, video of vending machine, at :06-:07).

Meanwhile, Christopher Edgar, a teacher and coach at Alcovy High, noticed the signs of a fight: the students moved to a particular area and the noise level increased. (Doc 74, pp 10:24-11:8). Observing the students running toward the snack machine area, the school resource officers and Coach Edgar perceived that a fight was in progress. (Id., pp:6-8, 21:13-14; Doc 72, pp 38:5-6, 81:4-9; Doc 71, pg 47:2-11; Doc 73, pp 31:8-11, 35:20-21). Alcovy High School teacher Matthew Pino reported that, hearing Coach Edgar frantically requesting help over his "walkie-talkie," Pino rushed to the commons area where he observed a large crowd of 300 or more students gathered and he, too, assumed a fight was in progress. (Doc 75, Smith Dep., Ex 3A). Responding to Coach Edgar's call for assistance and intending to break up a fight, the SROs ran towards the large group of students. (Doc 72, pp 37:19-38:10, 38:13-39:12; Doc 71, pp 43:23-44:14, 47:2-4; Doc 73, pp 21:24-22:9, 39:8-9; Doc 66, Ex B, Britt's BWC video (Plaintiff's Ex 16(B)), at :00-:10). The goal was to try to stop the fight before anyone got hurt. (Doc 74, pg 20:6-8).

After arriving at the snack machine area, Coach Edgar ascertained that students had pried the vending machines open and were stealing merchandise from

the machine. (Doc 74, pg 11:10-12). A.G. testified that Coach Edgar "tackled" A.G., pinning A.G.'s back against the vending machine. (Doc 67, pp 34:12-18, 35:5-7, 36:20-21).[2]

 After making her way through the crowd of students, SRO Washington saw Coach Edgar holding two students apart from one another, one with his left hand and one with his right. (Doc 73, pg 22:14-16). The area was chaotic at that time. (Id., pg 29:8-10; Doc 66, Ex B, at :08-:10).

Believing that the two students Coach Edgar was separating had been fighting (Doc 73, pg 22:20-23), Washington grabbed one of the students (not A.G.) that Coach Edgar was holding in an attempt to gain control. (Id., pg 30:11-16). Washington sought to get Coach Edgar, a civilian, out of the fray and to separate the two students Edgar was holding. (Id., pg 23:2-9; Doc 72, pg 39:1-7; Doc 66, Ex B, at :10).

Britt also believed that the two students Edgar was holding had been fighting. (Doc 72, pp 39:6-10, 41:2-9, 62:6-12). Britt spread his arms wide between the two students to keep them away from each other because he believed they were fighting. (Id., pp 39:8-10, 40:1-3, 41:6-9).  Britt stretched out his left arm to hold another

---

[2] According to Coach Edgar, he grabbed two backpacks and tried to pull the students attached to them away from the vending machine. (Doc 74, pp 11:21-12:2, 28:16-21). Coach Edgar later learned that one of the students whose backpack he grabbed was A.G., but at the time Edgar did not know his identity.  (Id., pg 12:3-5).

student away from A.G.. (Id., pp 41:5-9, 42:10-13, 92:6-8; Doc 66, Ex A, cell phone video (Plaintiff's Ex 16(A)),visible at :02). The student Britt held with his left hand was yelling and screaming and being disruptive. (Doc 72, pp 41:2-6, 42:10-13). Britt put his right hand on A.G.'s shoulder area along his neck and held A.G. with that hand against the vending machine for--at most--two seconds. (Doc 67, pg 44:6-16; Doc 71, pg 48:7-11; Doc 72, pp 62:16-18, 70:14-18, 91:13-92:5 and Ex 18(B); Doc 74, pg 26:6-8; Doc 66, Ex A, at :00-:01). At the time, Britt was not aware of the placement of his hand. (Doc 72, pp 52:13-15, 70:19-21). While Officer Britt had his hand on A.G.'s neck, A.G. could breathe. (Doc 67, pg 40:17-18).

Bartlett then approached A.G.. (Id., pg 41:17-24; Doc 66, Ex A, at :01). Britt let go of A.G. before Officer Bartlett approached. (Doc 67, pg 44:11-13; Doc 66, Ex A, at :01). A.G. had no further contact with Officer Britt. (Doc 67, pg 48:21-23, 93:7-12).

When he arrived on the scene, based on his experience, Bartlett also believed the students had been fighting. (Doc 71, pp 63:22-64:7, 96:14). Bartlett believed that A.G. was a victim of a fight among students. (Id., pg 71:16-18). Bartlett picked up A.G. and put him on the ground away from the action in order to remove A.G. from perceived danger. (Id., pp 51:2-4, 70:20-71:8).

A.G. initially testified that Bartlett picked A.G. up by his neck, put a hand on his body, and slammed him against the wall. (Doc 67, pg 43:2-4). After watching a

video of the incident, however, A.G. testified that he does not recall if Bartlett ever held his neck. (Id., pg 89:5-12, 92:21-23). A.G. testified that Officer Bartlett's right hand was along A.G.'s back under his backpack. (Id., pp 92:25-93:3; Doc 66, Ex A, at :01-:02).

Bartlett picked up A.G. with his arms around A.G.'s body. (Doc 67, pg 93:18-19; Doc 71, pp 48:18-20, 94:4-6, and Ex 18(B);Doc 74, pp 13:19-21, 14:2-4, 31:2-8; Doc 66, Ex A, at :01-:02). When Bartlett put his arms above A.G.'s waist under A.G.'s arms, he lifted A.G. off his feet and carried him away from the scene. (Doc 71, pp 58:23-25, 76:10-12, and Ex 13 thereto; Doc 66, Ex A, at :01-:03).  Bartlett attempted to place A.G. on the ground. (Doc 71, pg 59:1-2, 17-20; Doc 66, Ex A, at :03). Bartlett explained that as he was placing A.G. on the ground, A.G. twisted his body and he was able to wiggle down, landing on his knees. (Doc 71, pp 49:19-25, 59:1-5; Doc 66, Ex A, at :05 (A.G. is on his knees)).

A.G. testified that when he was coming down to the ground, the top of his head hit the wall. (Doc 67, pp 43:3-4, 46:3-9). A.G. did not have any injury to his head. (Id. pg 124:12-14). Bartlett then pulled A.G. away from the wall and stood over him to cover him up. (Doc 71, pp 59:4-6, 84:14-16, 94:20-22, 96:15-16, and Ex 30; Doc 66, Ex A, at :06-:07, Ex B, at :20).

Bartlett did not use a takedown, which he learned at mandate training is where you shoot in lower and remove the subject's feet forcibly from underneath them,

taking them to the ground with a larger use of force and landing on top of the subject. (Doc 71, pp 60:10-16). Instead, Bartlett's objective was to use a technique where he would not land on top of A.G., in which situation his own body weight would have added more force. (Id., pg 61:17-21). Bartlett did not land on top of A.G. or put his body weight on top of A.G. (Id.., pp 61:22-24, 84:8-13; Doc 74, pg 31:17-25; Doc 66, Ex A, at :05-:07). On the contrary, Bartlett used only the amount of force necessary to get A.G. on the ground. (Doc 71, pg 51:8-13. See, also, Doc 75, Smith Dep., Ex 3A and Ex 4, p. 3).

Washington heard Coach Edgar yell out that the students were stealing from the vending machine, at which point Washington first realized that there was not a fight in progress. (Doc 73, pp 30:17-31:1). Washington then yelled out something to the effect of, "It's good. They were stealing!" (Id., pg 31:5-7; Doc 66, Ex B, at :18). Hearing Washington yell that it was not a fight (Doc 72, pg 68:4-5), Britt then came over and tapped Bartlett to let him know. (Doc 67, pp 46:18-19, 97:15-17;Doc 72, pp 68:6-7 and 18-20, 69:1-5;Doc 71, pp 50:13-20; Doc 66, Ex A, at :06-:07, and Ex B, at :21-:22).

When he learned that there was no fight, Bartlett determined that A.G. was not in any danger. (Doc 71, pp 50:21-51:1). Bartlett extended a hand and helped A.G. to his feet. (Doc 67, pp 46:21-47:13, 103:12-24; Doc 71, pg 62:2-3; Doc 66, Ex A, at :16-:17). A.G. then walked to the office of his own accord. (Doc 67, pp

9

46:22,  47:14-15, 48:8-10, 105:18-20;Doc 71, pg 96:18; Doc 66, Ex A, at :21). Bartlett did not have any hands on A.G. as they walked to the office. (Doc 67, pp 48:11-17, 106:2-5; Doc 66, Ex A, at :21-:26). A.G. was never placed in handcuffs on the date of the incident. (Doc 67, pp 25:5-7, 48:20).

When they arrived in the office, Bartlett asked A.G. if he was okay. (Doc 67, pg 51:4-11). A.G. responded that he was fine. (Id., pg 51:8;Doc 71, pp 73:7-10, 76:22-25 and Ex 13 thereto). A.G. was okay physically. (Doc 67, pg 127:14-18).

After the incident, A.G. had bruises and scrapes on his knees, a bruise on his neck, and external bruising on his rib cage. (Doc 67, pp 84:5-85:2, 124:5-9, and Ex 7). A.G. and his mother went home for a while and then to A.G.'s pediatrician at Rockdale Pediatrics. (Id., pp 67:20-21, 68:2-5; Doc 70, Latoya Glenn Dep., pg 32:1-4). The doctor examined A.G.. (Doc 70, pg 33:4-18). A.G. had an x-ray that showed there was no injury to his ribs. (Doc 67, pp 68:23-69:3; Doc 70, pp 33:19-34:10). The pediatrician suggested A.G. take Ibuprofen for pain in his left flank and left-sided thoracic back pain. (Doc 64, Ex D, A.G.'s medical records[3]). A.G. did not take anything for pain. (Doc 67, pg 69:11-12; Doc 70, pg 35:1-13; Doc 64, Ex D, p. 7).

The pediatrician referred A.G. to counseling. (Doc 64, Ex D, p. 8).  About a week later, A.G. went to see a therapist at the Academy for Family Empowerment. (Doc 67, pp 69:22-24, 70:20-22). A.G. advised the therapist that he is fine, and his

---

[3] The District Court granted Defendants' motion to file Ex D under seal. (Doc 77).

mother advised that she has not noticed any negative changes in his behavior. (Doc 64, Ex D, p. 19). According to A.G., he had approximately eight sessions with a therapist. (Doc 67, pp 26:3-16, 70:10-11, 126:3-5; Doc 70, pg 37:1-15). One of the stated goals of therapy was to improve A.G.'s academic performance. (Doc 64, Ex D, p. 22).

After the incident, A.G. was charged with theft by taking. (Doc 167, pp 54:8-9, 115:20-116:5, and Ex 2 ). A.G. received a warning for the criminal conduct. (Doc 167, pg 116:2-5 and Ex 2).

### 3.  <u>Standard of Review: Motion for Summary Judgment Standard</u>

Appellate courts review an order granting a motion for summary judgment *de novo* with the court applying the same standard of review as the district court. <u>Battle v. Bd. of Regents for Georgia</u>, 468 F.3d 755, 759 (11th Cir. 2006). All reasonable factual disputes are reviewed in favor of the non-moving party, but only if there is a genuine dispute as to those facts. <u>Scott v. Harris</u>, 550 U.S. at 380. Additionally, the district court's grant of summary judgment must be affirmed if it is right for any reason supported by the record. <u>Payroll Management, Inc. v. Lexington Ins. Co.</u>, 815 F.3d 1293, 1300 (11th Cir. 2016).

A district court's decision to grant the defense of qualified immunity is a question of law reviewed *de novo* on appeal. <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1233 (11th Cir. 2003)(*cert. den*. 530 U.S. 1270 (2000)).

11

## SUMMARY OF THE ARGUMENT

This civil rights action involves the School Resource Officers' emergency response to a call for assistance regarding what they perceived to be a fight. Before school, a large crowd of students rushed toward the area where snack machines are located, creating a commotion. A.G. admits that he grabbed, without payment, a Snickers bar from a vending machine, and he is clearly visible stealing the candy on video footage taken by a fellow student.

Responding to a call for help from Coach Edgar, a school employee, the school resource officers on duty rushed to the area. Assuming a fight was in progress based on their previous experience with frequent fights among students, the Officers made their way through the crowd with the goal of breaking up the confrontation before anyone got hurt. To separate two students whom he believed to be combatants, Britt stood between them with his right hand on one student (A.G.) and his left hand on another student. Within seconds, Bartlett arrived, picked up A.G. by the waist and moved him out of striking range of the student Britt was holding back. As Bartlett lowered A.G. to the ground, A.G. twisted around and landed on his knees. Bartlett pulled A.G. away from the wall and stood watch over him.

Britt then heard yelling that the students had been stealing candy, so Britt turned to Bartlett to let him know it was not a fight. Bartlett then reached his hand down and helped A.G. to his feet. **The interaction lasted under twenty seconds**.

The district court correctly dismissed Glenn's claims against Britt and Bartlett on summary judgment. The District Court correctly concluded that both Britt and Bartlett used only *de minimis* force, which does not rise to the level of a Fourth Amendment violation. Finding that the Officers were entitled to use some force in the situation given that they had observed the signs of a fight, with which they had experience, and believed that a fight was ongoing, the District Court dismissed the claims that the force was excessive. Even if the Officers did not reasonably believe that a fight was happening, however, the Officers were authorized to use some force in the course of arresting A.G. for theft by taking.

Britt's "choking" of A.G. for, at most, two seconds, while he attempted to separate A.G. from another student with his right hand, was *de minimis* force. Bartlett's act of scooping up A.G. under his arms, carrying him away from the area in front of the vending machine, putting him on the ground, and pulling him away from the wall also was *de minimis*. Even if this Court takes A.G.'s testimony that Bartlett "slammed" him so that his head hit the wall, the extent of injury inflicted weighs in favor of finding that the force was *de minimis*. A.G. admits that he suffered no injury to his head. Indeed, A.G.'s only injuries were bruises and scrapes.

Additionally, the Officers are entitled to qualified immunity as to the excessive force claims. As an initial matter, Britt and Bartlett were engaged in discretionary functions; Glenn does not dispute this in her Opening Brief. Next,

{Firm/1321/00001/APPEAL/04335296.DOCX }

Glenn is not able to show that Britt's and Bartlett's actions were violations of clearly established law by any of the three methods. Accordingly, Britt and Bartlett are immune from Glenn's excessive force claim.

## ARGUMENT AND CITATIONS OF AUTHORITY

**1.  The District Court Correctly Concluded that the SROs'  Use of Force was *De Minimis* and Cannot Support a Claim of Excessive Force.**

The District Court correctly dismissed the sole cause of action that is subject to this appeal: the claim that Britt and Bartlett violated A.G.'s Fourth Amendment rights by using excessive force. (Doc. 1, Count 2, pg 7).  Claims involving alleged excessive force during an arrest should be analyzed under the reasonableness standard of the Fourth Amendment. Graham v. Conner, 490 U.S. 386, 395 (1989). An officer's actions must be objectively reasonable under the circumstances known to the officer. Graham, 490 U.S. at 396-97. The amount of force used should be "reasonably proportionate to the need for force." Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004)(*cert. den*., 543 U.S. 988 (2004)). Courts must consider the "totality of the circumstances," taking into account the need for force, the amount of force used, and the extent of the injury in determining whether the force used was reasonable. Draper v. Reynolds, 369 F.3d at 1277-78.

Glenn argues a jury could find that the "totality of the circumstances" did not justify the level of force used by Britt and Bartlett where the crime at issue was petty theft and that any force was gratuitous where A.G. was not combative or resisting. (Appellant's Opening Brief at 13-18). As the District Court recognized, however, "the Defendant Officers were entitled to use some force in this situation given that

Defendants had been called to the common area on the presumption students were fighting." (Doc 87 at 8-9). Acknowledging that the video evidence corroborates testimony that A.G. "is not threatening the Officers in any noticeable way and appears to have his hands raised in a surrender posture," the District Court noted that Glenn "does not dispute that '[t]he school resource officers ran towards the large group of students intending to break up a fight' or that the 'rush' to the area was to 'try to stop the fight before anyone got hurt.' Doc. No. 82-1 (Plaintiff's Response to Defendants' Statement of Facts, 5 at ¶¶ 17-18." (Doc 87 at 9, n. 5). The District Court correctly concluded that "both Officers were entitled to ensure that [the] common area was secure and that no one got hurt." (Doc 87 at 10). School resource officers are charged with the responsibility to maintain school safety and to investigate possible criminal activity on school grounds. (Doc 71, pp 29:1-3, 37:10-38:3; Doc 72, pg 25:4-7; Doc 73, pg 14:11-19).

Law enforcement officers may detain suspects and innocent bystanders to protect themselves or others from harm or to gain control of an incident. *See, e.g.*, Croom v. Balkwill, 645 F.3d 1240, 1248-49 (11th Cir. 2011) (temporary detention of an occupant while the premises are being searched is lawful under the Reasonableness Clause of the Fourth Amendment); Jones v. Walsh, 711 F.App'x 504, 506 (11th Cir. 2017)(officers did not violate the Fourth Amendment by detaining persons temporarily to verify or dispel suspicion of criminal activity and

16

did not use excessive force by drawing weapons when reasonably necessary for protecting an officer or maintaining order). A law enforcement officer may lawfully seize a person for purposes of a brief investigation when only a reasonable and articulable suspicion exists. <u>Gray v. State</u>, 296 Ga. App. 878, 880 (2009)("An officer must make quick decisions as to how to protect himself from possible danger.") Moreover, Fourth Amendment rights are applied differently in public schools than elsewhere, as the reasonableness inquiry cannot disregard the schools' custodial and tutelary responsibility for children. <u>Ziegler v. Martin Cnty School District</u>, 831 F.3d 1309, 1319 (11th Cir. 2016)(detention of students prior to performing breath test did not violate Fourth Amendment where school resource officer employed by sheriff's office had reasonable basis for believing students had violated school's rules and state law). Indeed, "[s]ecuring order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults." <u>Id.</u> (*quoting* <u>Bd. of Educ. Of Indep. Sch. Dist. No 92 of Pottawatomie Cnty v. Earles</u>, 536 U.S. 822, 831 (2002)). Hence, the District Court correctly concluded that the officers were entitled to use some force in a situation where they believed a fight was ongoing.

Even if this Court disagrees with the District Court that Britt and Bartlett were entitled to ensure the common area was secure and that no one got hurt during the perceived fight, Britt and Bartlett were entitled to use some force in effecting A.G.'s

arrest. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. Some degree of force is lawful to effect an arrest, regardless of the severity of the alleged offense and even if the force used was unnecessary. Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003)(*cert. den*., 543 U.S. 917 (2004)) (the application of *de minimis* force—forcing the arrestee to the ground and placing him in handcuffs—was not unlawful if the arrest for pedestrian in the roadway was founded on probable cause). The record is undisputed that A.G. stole a candy bar from the vending machine. (Doc 67, A.G. Dep. – pp 32:9-19, 112:2-19; Doc 66, Exh C, video of vending machine, at :06-:07). There was probable cause to arrest A.G. for this crime. *See* District of Columbia v. Wesby, 583 U.S. 48, 56-57 (2018). A.G. received a warning for this charge. (Doc 67, pg 116:2-17).

At page 18 of her opening brief, Glenn argues that, assuming A.G. was lawfully detained for theft, he had the right to be free from the use of excessive force in the course of an arrest. The cases Glenn cites are inapposite, however. In Saunders v. Duke, 766 F.3d 1263 (11th Cir. 2014), the plaintiff was handcuffed on hot pavement and when he lifted his head off the ground to keep from burning his face, one of the agents slammed his head into the pavement so hard that blood poured from his mouth, resulting in significant injuries. Similarly, in Hadley v. Gutierrez,

526 F.3d 1324 (11th Cir. 2008), the plaintiff was handcuffed when the officer punched him in the stomach. Under those circumstances, this Court concluded that the punch constituted excessive force. In the instant case, however, A.G. was never handcuffed.[4] (Doc 167, pp 25:5-10, 48:20). Moreover, Britt's contact with A.G. was mere seconds and as soon as Bartlett realized there was no fight, he helped A.G. to his feet. (Id., pp 46:18-22, 48:21-49:1)).

The District Court correctly held that both Britt and Bartlett used only *de minimis* force on A.G. (Doc 87 at 10). In deciding whether an officer's actions were objectively reasonable, the Eleventh Circuit has established that "the application of *de minimis* force, without more, will not support a claim for excessive force." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding that only *de minimis* force was used where an officer grabbed plaintiff by the wrist, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of a van, searched his groin area in an uncomfortable way, and placed him in handcuffs, resulting in minor bruising after Plaintiff was arrested for public fighting). *See, also*, Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013); Croom v. Balkwill, 645 F.3d 1240, 1252 (11th Cir. 2011).

---

[4] Although Glenn argues at page 20 of her opening brief that the same rationale applies to gratuitous force that is used prior to handcuffing, the support for this proposition is a footnote in Stephens v. DeGiovanni, 852 F.3d 1298, 1328 n. 33 (11th Cir. 2017). Even assuming a footnote can clearly establish law, this statement is pure dicta and provides no citations.

### a. SRO Britt Did Not Use Excessive Force

A.G. testified that Britt "came and choked me and pinned me up against the vending machine." (Doc 67, pg 37:1-3). A.G. alleges that Britt pushed on the right side of his neck with his thumb. (Id., pp 39:15-40:2). A.G. admits he could breathe and that "it all happened so fast." (Id., pg 40:17-18). A.G. also testified that before Bartlett was on the scene, Britt's hand was no longer touching A.G. and he had no further physical contact with Britt. (Doc 67, pp 44:11-13, 48:21-23, 93:7-12; Doc 66, Ex A, at :01).

Notwithstanding A.G.'s contention that Britt choked[5] him, the video evidence clearly shows that Britt's right hand is on A.G.'s collarbone area alongside his neck and mid-way below his ear for not more than two seconds. (Doc 172, Ex 18(B); Doc 66, Ex A, at :00-:01). Britt's left hand was against another student and not touching A.G. (Doc 66, Ex A at :02). The video evidence supports Britt's version of events. Objective video evidence discredits Plaintiff's version of events so that a rational trier of fact could not find for Plaintiff based the record as a whole. Scott v. Harris, 550 U.S. 372, 380-81 (2007). Where, as here, video recordings show the pertinent

---

[5] In Glenn's opening brief, she argues that Britt placed a "chokehold" on A.G. (Appellant's Brief at 10). Appellees object to the use of this term as inaccurate and unduly prejudicial. Britt's two-second one-handed touching of A.G. was not a chokehold. (Doc 67, pg 44:1-13; Doc 66, Ex A, at :00-:01). A chokehold is a way of holding someone by putting an arm tightly around the neck so they cannot breathe easily. dictionary.cambridge.org/us/dictionary/english/chokehold. The video evidence clearly shows that Britt never put his arm around A.G.'s neck.

20

events, the court should view the facts in the light depicted by the videos. Kraus v. Martin Cnty Sheriff's Office, 753 F. App'x 668, 673 (11th Cir. 2018)(*quoting* Jones v. Michael, 656 F. App'x 923, 926 (11th Cir. 2016)(*quoting* Scott, 550 U.S. at 381)).

Even taking Plaintiff's version of events as true[6], there is support in this Circuit for finding that "choking" an individual who is not handcuffed constitutes *de minimis* force. In Gomez v. U.S., for example, the Eleventh Circuit affirmed the dismissal of the plaintiff's civil rights claim, finding that a law enforcement officer's actions of grabbing a detainee by the neck, choking him, and slamming him into the side of a vehicle was *de minimis* force even though the plaintiff never physically or verbally resisted the officer. Gomez v. U.S., 601 F. App'x 841, 843, 851 (11th Cir. 2015). *See, also*, Hines v. Jefferson, 338 F.Supp.3d 1288, 1299 (N.D.Ga. 2018)(*aff'd* 795 F.App'x 707 (11th Cir. 2019).

The Eleventh Circuit considers a minor injury as evidence that the level of force applied was *de minimis* and not excessive. *See* Nolin, 2017 F.3d at 1256. In Jones v. City of Dothan, 121 F. 3d (11th Cir. 1997), the court concluded that both the force used and the injury inflicted were minor where the officers slammed the plaintiff against the wall, kicked his legs apart, and required him to raise his arms above his head, causing pain to the plaintiff's arms and pain in his knee for which

---

[6] The Court must view the evidence in the light most favorable to the non-moving party. Celotex, *supra*.

he received minor medical treatment. Id. 121 F.3d at 1460. Similarly, there was no constitutional violation where an officer pushed the plaintiff out of an elevator, causing him to hit a partially open steel door and bruise his elbow and shoulder for which he received a prescription for ibuprofen; the court ruled that the force used and the injury inflicted were both *de minimis*. McCall v. Crosthwait, 336 F. App'x 871, 873 (11th Cir. 2009).

Even where an arrestee's injuries are serious, however, this alone cannot transform a de minimis use of force into an excessive use of force. In Andrade v. Sheriff of Lee Cnty, Fl, No. 23-10438, 2023 WL 6389812, *6 (11th Cir., Sept. 29, 2023), while the defendant deputy was pulling plaintiff away from a scuffle, plaintiff's husband became involved and the deputy lost his grip, causing all three to fall to the ground. The deputy then secured the plaintiff on the ground with his knee and hand and then stood her up and hand-cuffed her. The Court held that the force used was *de minimis,* despite the fact that the plaintiff has lasting migraines and underwent jaw and shoulder surgery. Id.

### b. SRO Bartlett Did Not Use Excessive Force

The District Court also correctly concluded that Bartlett used only de minimis force that does not support a constitutional violation. (Doc 87, pg 11). The District Court concluded that Bartlett, for summary judgment purposes, "picked up Plaintiff around the waist, carried him a few paces, threw him to the ground, made him hit

his head against a wall, and drug him across the floor. Doc No 66, Exh A (Cell Phone Video) 00:02-00:08." (Doc 87, pg 11). Glenn argues that the court erred in reaching this conclusion, arguing that "body-slamming"[7] a non-violent suspect violates that suspect's Fourth Amendment right to be free of excessive force.

The video evidence does not support Glenn's argument that Bartlett slammed A.G. to the ground. On the contrary, the video evidence shows Bartlett picking up A.G. with his arms around A.G.'s waist and carrying him from the scene. (Doc 66, Ex A, at :01-:03). The video evidence shows A.G. on his knees with Bartlett standing, leaning over A.G., not on top of him. (Id., at :05). Bartlett's hands remain on A.G. after A.G. is on the floor. (Id.) Bartlett then pulls A.G. away from the wall. (Id., at :05-:07). The video then shows Britt attempting to get Bartlett's attention. (Id., at :07-:16). Almost immediately, Bartlett is helping A.G. to his feet. (Id., at :16).

---

[7] In Glenn's opening brief, she argues that Bartlett "body-slammed" A.G. to the floor. (Appellant's Brief at 10). Appellees object to the use of this term as inaccurate and unduly prejudicial. A body slam is a wrestling technique where one person lifts another over the head and throws the person to the floor. dictionary.cambridge.org/us/dictionary/english/body-slam. Video of the incident clearly shows that Bartlett did not lift A.G. over his head and throw him to the ground. On the contrary, the video shows that as Bartlett is lowering A.G. to the ground, he still has his arms around A.G.'s middle. (Doc 66, Ex A at :03). Unfortunately, the video cuts away from Bartlett and A.G. briefly, but when it cuts back, Bartlett is standing, leaning over A.G. with his knees bent and his hands still on A.G. (Id. at :05). This is not the posture of someone who has body-slammed another.

Even if this Court credits A.G.'s characterization of Britt's act as a "slam," however, Bartlett this Court should affirm the decision to grant summary judgment. As discussed above, *de minimis* force does not constitute a Fourth Amendment violation. In <u>*Croom v. Balkwill*</u>, as officers stormed a house to execute a search warrant, they ordered an elderly woman seated in the front yard to "hit the ground." 645 F.3d 1240, 1245 (11th Cir. 2011). Due to her arthritis, the woman squatted instead, so an officer then pushed her to the ground and held her there with a foot on her back for ten minutes. *See* <u>*Id*</u>. The Eleventh Circuit found the force the officer used, although perhaps not "truly necessary under the circumstances," was *de minimis*. <u>*Id*</u>. at 1252.

As discussed above, *de minimis* injury is evidence that supports a finding of *de minimis* force. Bartlett submits that the scrapes on A.G.'s knees and the bruises on the outside of his ribs are *de minimis*. Although A.G. alleges that his head hit the wall as Bartlett threw him, the record is undisputed that A.G. suffered no head injury. (Doc 67, pg 124:12-14). Even where the plaintiff's injury is serious, however, the force used may still be *de minimis*. In <u>Horn v. Barron</u>, 720 F. App'x 557 (11th Cir. 2018), the defendant officer escorted the plaintiff out of a concert after she shoved another concert-goer. After the plaintiff pulled her arm away from the officer, he "used a soft hands, straight arm bar takedown technique in order of gain control of [plaintiff], by which he took hold of her left arm, put his right arm over it, and

24

brought her to the ground using gravity and his own weight." Id. at 560. Although the plaintiff suffered a broken arm that required surgery, the appellate court concluded that the takedown technique by an officer who had no assistance on a plaintiff who was not handcuffed was not intended to cause the injury and, hence, the officer was entitled to qualified immunity. Id. at 565.

Similarly, in Cordoves v. Miami-Dade County, 2015 WL 1131684 (S.D.Fla. 2015), where the plaintiff passed out, fell, and suffered multiple contusions and lasting injuries that required surgery, the Court nonetheless concluded that the force used by the defendant officer was reasonable. After bringing a dog to the mall, the plaintiff refused to leave when directed. The defendant police officer then grabbed the plaintiff's forearm, spun her around so that her back was to him, pulled both of her arms up, placed her in a bear hug and began squeezing her extremely hard, causing pain. The plaintiff was not in handcuffs. After the officer slammed her into a store window, she lost consciousness and hit her head when she fell to the floor. Finding that it was reasonable that the officer who was squeezing the plaintiff from behind could not see the plaintiff's facial expressions, the Court concluded that an objectively reasonable officer could not have concluded that the force used was excessive. Id. at 1237. Similarly, an objectively reasonable officer could not have concluded that the force used by Bartlett was excessive. *See* Alexandre v. Ortiz, 789

F. App'x 169, 174 (11th Cir. 2019)(a takedown measure is *de minimis* and does not constitute excessive force).

In support of her claim that Bartlett's actions were excessive, Glenn relies on <u>Richmond v. Badia</u>, 47 F.4th 1172 (11th Cir. 2022), in which a school employee reported to the defendant school resource officer that a student had pushed his mother. The defendant cursed at the plaintiff and mocked him, during which the plaintiff did not look at the defendant, who then grabbed the student's face to make him look at him. The plaintiff tried to block the defendant's hand as it reached for his face by using his arm and by stepping back. The defendant then shoved the plaintiff in the chest, pushed plaintiff to the center of the lobby, and "used an 'armbar' technique to lift Richmond off his feet, flip him onto his back, and slam him to the ground." <u>Id.</u> at 1178. The Court concluded that there was no legitimate law enforcement reason to grab the plaintiff's face. Unlike the case at bar, where the Officers were reacting to the objective signs of a fight in progress, the defendant was not using force to effect an arrest, nor was there any other law enforcement justification for twisting the plaintiff's wrist or pushing him in the back. <u>Id.</u> at 1183. Additionally, the force was stronger than that applied by Bartlett. <u>Badia</u> ] does not support a finding that there is a jury question in Glenn's case.

2. **<u>The District Court Properly Ruled the Officers are Entitled to Qualified Immunity as to the Excessive Force Claims.</u>**

26

Even assuming Glenn has established a constitutional violation, Britt and Bartlett are shielded from liability by the doctrine of qualified immunity. Under this doctrine, government officials performing discretionary functions may not be held individually liable for civil damages unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194, 200-201 (2001). This standard requires the Court to make two determinations: (1) whether the defendants committed a violation of the plaintiff's constitutional rights, and (2) whether the violation was governed by clearly established law. Id. at 201. Courts may exercise their sound discretion in deciding which of the two Saucier prongs to address first in light of the circumstances of the particular case. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "[C]learly established law" should not be defined "at a high level of generality" but must be "particularized" to the facts of the case. White v. Pauly, 580 U.S.73, 137 S.Ct. 548, 551-52 (2017). A defendant is immune from liability unless the plaintiff can show no reasonably competent officer would have taken the actions the defendants took. In effect, "if officers of reasonable competence could disagree on

27

this issue, immunity should be recognized." <u>Malley v. Briggs</u> 475 U.S. 335, 341 (1986).

### a. The Subject Acts are Discretionary.

A law enforcement officer's decision whether to arrest an arrestee and the proper amount of force to use to effect that arrest are discretionary acts. <u>Jones v. City of Atlanta</u>, 192 F. App'x 894, 897 (11th Cir. 2006). A school resource officer's duties include responding to calls regarding possible criminal activity. Thus, Britt and Bartlett have satisfied the first prong of the qualified immunity analysis.

### b.  Britt and Bartlett Did Not Violate Clearly Established Law.

Where, as here, there was no constitutional violation nor was the law clearly established, Britt and Bartlett are entitled to qualified immunity from suit. Where the defendant acted within his discretionary authority, there are several methods of showing clearly established law: (1) by pointing to a materially similar decision of the Supreme Court, of the Eleventh Circuit, or of the supreme court of the state in which the case arose; (2) by establishing a broader, clearly established principle should control the novel facts of the case; or (3) by demonstrating conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. <u>Powell v. Snook</u>, 25 F.4th 912, 920 (11th Cir. 2022)(*quoting* <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1159 (11th Cir. 2005)).

28

In her Opening Brief, Glenn attempts to show the law is clearly established by arguing that a "broader, clearly established principle" in the Eleventh Circuit's caselaw gave Britt and Bartlett fair warning that their conduct was unconstitutional. The caselaw does not provide fair warning, however. In <u>Badia</u>, ] 47 F.4th at 1184, the defendant used an armbar technique on a person who did not pose a threat to the officers or anyone else. In the case at bar, however, the conduct at issue was not gratuitous; rather, it was *de minimis*. In <u>Smith v. Mattox</u>, 127 F.3d 1416 (11th Cir. 1997), the defendant officer broke the suspect's arm in the course of trying to handcuff him, requiring surgery for multiple fractures; the Court concluded that Smith falls within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw. <u>Id.</u> at 1420. The Court denied qualified immunity, finding that "[t]he grunt and the blow that Smith asserts that he heard and felt while Mattox was on Smith's back, coupled with the severity of Smith's injury, push this case over the line." <u>Id.</u> at 1419.

The remaining cases cited by Glenn involved the use of force on hand-cuffed suspects. *See* <u>Saunders</u>, 766 F. 3d at 1265; <u>Hadley</u>, 526 F.3d at 1330, 1334; <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002); <u>Slicker v. Jackson</u>, 215 F.3d 1225, 1227 (11th Cir. 2000). These cases are distinguishable from the facts of Glenn's case insofar as they all involve force used on hand-cuffed suspects. As noted above, a

footnote in <u>Stephens v. DeGiovanni</u> indicates that the law is not clearly established. 852 F.3d at 1328, n. 33.

Glenn next argues that the law applicable to her claims is clearly established because of the "obvious clarity" test whereby the conduct at issue was so egregious that any officer should have fair notice of a violation. (Appellant's Brief, p. 23). The District Court correctly concluded, however, that <u>Badia</u> ] is distinguishable because, in the case at bar, the ongoing situation justified some use of force. It is undisputed that the situation to which Britt and Bartlett were responding was chaotic, involving a crowd of 100 students or more. Additionally, Britt and Bartlett reasonably believed that a fight was underway. In <u>Jackson v. McCurry</u>, 762 F.App'x 919, 933 (11th Cir. 2019), this Court held that a school resource officer was entitled to qualified immunity where his use of force – gripping a father's arm in order to remove him from campus, was de minimis and because the officer reasonably believed that the father had been hostile with school officials on earlier occasions. Similarly, Britt and Bartlett were objectively reasonable in light of the facts and circumstances confronting them. Hence, the minimal force applied here does not meet the obvious clarity test.

On the contrary, established law favors the District Court's ruling that Britt and Bartlett are entitled to qualified immunity. In <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1559 (11th Cir. 1993) (*modified on other grounds*, 14 F.3d 583 (11th Cir.

30

1994), the Eleventh Circuit held that the defendant law enforcement officers were entitled to qualified immunity from the plaintiff's excessive force claim alleging that the officers put the plaintiff in a chokehold for about five seconds. Even if, in hindsight, the force used was unnecessary, some amount of unnecessary force is not plainly unlawful. Post, 7 F.3d at 1559-60 ("[E]ven though pushing [the plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful" because *de minimis* force was used.)

Likewise, in WBY, Inc. v. DeKalb County, 2016 WL 3128397 (N.D.Ga., Jan. 13, 2016)(May, J.)(*reconsid. granted on false arrest claim*, 2016 WL 7334648 (N.D.Ga., April 11, 2016)), the court held that the defendants were entitled to qualified immunity from the plaintiff's excessive force claims. In WBY, the plaintiff claimed that his Fourth Amendment rights were violated when the officers threw him up against a wall, pulled his arm back away from his body, handcuffed him, and, while escorting him out of the club, slammed him into a set of double doors and pushed him into the metal detector. The plaintiff received only minor injuries— bruises on his shoulder and stomach. The Court concluded that the law is not clearly established that use of *de minimis* force will support a claim for excessive force in violation of the Fourth Amendment. Accordingly, the court granted the officers' motions for summary judgment as to the excessive force claims.

Qualified immunity protects actions by police officers in the hazy border between excessive force and acceptable force. Mullenix v. Luna, 577 U.S. 7 (2015). In Hines v. Jefferson, 795 F. App'x at 712, the Eleventh Circuit held that a school resource officer who allegedly picked up a student who had been in a fight by her neck and carried her to the office was entitled to qualified immunity because the force did not violate clearly established law. The court concluded that the officer's conduct was not "so far beyond the hazy boarder between excessive and acceptable force" that the officer had to know her conduct was unconstitutional.

In Hines, *supra*, the school resource officer responded to an actual fight. Here, of course, Britt and Bartlett reasonably deduced that a fight was underway, though this turned out not to be the case. Qualified immunity covers mistakes in judgment, however. Powell v. Snook, 25 F.4th at 924.  Immunity applies whether the officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law or fact.  Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) ("[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."); Butz v. Economou, 438 U.S. 478, 507 (1978); Fuqua v. Turner, 996 F.3d 1140 (11th Cir. 2021). Officers are entitled to qualified immunity where they "need to exercise quick measures to control a violent altercation that may or may not have escalated." Robinson v. MARTA, 334 Ga. App. 746, 751 (2015).

For these reasons, this Court should affirm the District Court's decision granting their motion for summary judgment based on qualified immunity.

### 3. **Glenn Abandoned Corporal Punishment Claims**

In her Opening Brief, Glenn does not address the corporal punishment claim, thereby abandoning this cause of action. "[W]hen a district court judgment is based upon multiple, independent grounds, an appellant must convince the appellate court that each enumerated ground for the judgment against [them] is incorrect." Boone v. Gaxiola, 665 F. App'x 772, 775 (11th Cir. 2016)(*citing* Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014). In any event, the District Court correctly analyzed the undisputed facts regarding the corporal punishment claims and ruled that Britt and Bartlett are entitled to summary judgment. (Doc 87 – Pp 17-21). This Court should affirm those rulings.

### **CONCLUSION**

As demonstrated above, Glenn failed to appeal the dismissal the corporal punishment claim and, therefore, she abandoned these claims.

In addition, the District Court was correct in dismissing the excessive force claims on the ground that the force used by Britt and Bartlett was *de minimis*. The lower court also correctly ruled that the excessive force claims against the Officers are barred by qualified immunity. Therefore, this Court should affirm the District

Court's Order dismissing this case in its entirety.

This 20th day of November, 2023.

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

*/s/     Karen E. Woodward*
                Karen E. Woodward

Meridian II, Suite 2000
275 Scientific Drive
Norcross, Georgia 30092
(404) 881-2623
kwoodward@cmlawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 8,333 words. In addition, this brief complies with the style and size requirements of FRAP 32(a)(5) and (6).

This 20th day of November, 2023.

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

*/s/     Karen E. Woodward*
Karen E. Woodward

Meridian II, Suite 2000
275 Scientific Drive
Norcross, Georgia 30092
(404) 881-2623
kwoodward@cmlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day electronically filed this **BRIEF OF DEFENDANTS-APPELLEES SHANE BRITT AND DERRECK BARTLETT** using the Electronic Case Files ("ECF") system, which automatically will serve Appellants by email to:

| | |
|---|---|
| Mawuli M. Davis | Cary S. Wiggins |
| Davis Bozeman Law Firm, PC | Wiggins Law Group, LLC |
| 4153 B. Flat Shoals Pkwy, Ste 204 | 260 Peachtree St., NW, Ste. 401 |
| Decatur, GA 30034 | Atlanta, GA 30303 |
| mdavis@davisbozemanlaw.com | cary@wigginslawgroup.com |
| thodge@davisbozemanlaw.com | |

*Counsel for Appellant Latoya Glenn*

This 20th day of November, 2023.

/s/ Karen E. Woodward
Karen E. Woodward
Georgia Bar No. 775260
kwoodward@cmlawfirm.com
Direct: (404) 881-2623

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**
Meridian II, Suite 2000
275 Scientific Drive
Norcross, Georgia 30092